The third case this morning is 5-22-0717, People v. Hamilton. Arguing for the Plaintiff Appellant is Craig Hanson. Arguing for the Defendant Appellee is Jamie Bella. Each side will have 10 minutes for their argument. The Appellant will also have 5 minutes for rebuttal. Please note, only the Clerk of the Court is permitted to record these proceedings today. Good morning, Counsel. We appreciate you waiting. Our last case was a lengthy case involving many issues, so we appreciate your patience. Mr. Hanson, are you ready to proceed? Yes, Your Honor. You may do so. Good morning. May it please the Court, Opposing Counsel. I'm Craig Hanson from the Office of the State Appellate Defender on behalf of the Appellant, Mr. Ian Hamilton. Mr. Hamilton was convicted of armed habitual criminal and unlawful use of a weapon by a felon following a jury trial. At issue here is whether he received a fair trial in light of the matters raised in this appeal. People's Exhibit 1 was a written stipulation signed by Defense Counsel and the State listing Mr. Hamilton's prior convictions for aggravated robbery and aggravated unlawful use of weapons. Here, the only purpose in admitting evidence of these convictions was to prove that he had been convicted of qualifying offenses under the armed habitual criminal statute. In People v. Taylor, a case concerning stipulation for the offense of armed habitual criminal, this Court held that the prejudicial effect of placing the name and nature of the prior felonies repeatedly before the jury outweighed the probative value. Here, before the stipulation was even presented, Mr. Hamilton stated that he was concerned about the prejudicial effect of naming his prior convictions to the jury. By providing a written stipulation listing his prior conviction, the jury was presented with unduly prejudicial evidence, which undermines confidence in the trial's outcome. This Court applied the familiar two-pronged Strickland test when it decided Taylor, and held that Defense Counsel's failure to preclude the introduction of a defendant's prior qualifying convictions for the offense of armed habitual criminal was objectively unreasonable, and that the defendant suffered prejudice from Defense Counsel's deficient performance. More recently, in People v. Tolliver, the Second District Appellate Court concurred with this Court's reasoning in Taylor when it held that where a defendant charged with armed habitual criminal is willing to stipulate to two qualifying offenses, the trial court is obligated to accept the stipulation because the evidentiary significance of the predicate conviction is the same as the stipulation, except that one creates a risk of undue prejudice and the other does not. In Taylor, the State did not argue that Counsel's failure to stipulate was a matter of trial strategy, nor has the State made that argument here. Therefore, Taylor should apply equally to this case. Accordingly, where Mr. Hamilton suffered prejudice as a result of Counsel's failure to properly stipulate in a case where the evidence was closely balanced, this Court should reverse his conviction and remand for a new trial. The next issue I'd like to discuss concerns the jury note. The Constitution guarantees that nothing shall be considered against the defendant except the competent evidence introduced in open court, in his presence, by the witnesses who confront him. That's from People v. Holmes, a case cited significantly by the State. During jury deliberations, the Court received a note from the jury stating, quote, we feel we have a juror who is in fear of repercussions if a verdict is reached. The note identified that juror as Tiara Jones. Although Defense Counsel sought to inquire as to what Ms. Jones actually said to the other jurors, the trial court refused to entertain the notion of any inquiry. Mr. Hamilton stated that he wanted Ms. Jones to remain on the jury and no inquiry was conducted at that time. However, it is important to note here that Mr. Hamilton agreed to retain Ms. Jones as a juror after the court had already refused to allow any inquiry into what she said to the other jurors. However, new Defense Counsel raised this issue in a post-trial motion and subpoenaed some of the jurors, including Ms. Jones. Counsel stated that he had no intention of inquiring as to how the jurors reached their verdict and would limit his inquiry to the question of whether or not there was extraneous information that was brought to the other jurors. It should be noted that Mr. Hamilton was powerless to compel any juror to provide either an affidavit or even discuss the case with Defense Counsel, hence the need for the Defense Counsel to subpoena the jurors. The state sought to quash these subpoenas, arguing that the proposed inquiry amounted to an impermissible inquiry into the motive and method or process by which a jury reached its verdict. Defense Counsel proffered that subpoenaed jurors would testify that the extraneous information would be that Ian Hamilton's family is dangerous and if there is a verdict reached that he's not happy with, that someone's going to come get me or hurt me or hurt Tiara Jones. None of that information appears anywhere else in the record and suggests that Ms. Jones brought impermissible extraneous information to the attention of other jurors. Defense Counsel again acknowledged that he was barred from asking about the deliberative process or how any extraneous information affected the jurors. Counsel simply wanted to make a record of what was said. In granting the state's motion to quash the juror subpoenas, the trial court held that Defense Counsel's proffer contained no evidence that extraneous prejudicial information was improperly brought to the jury's attention. The trial court's ruling is directly at odds with Illinois Supreme Court Rule 606, which specifically permits a juror to testify as to whether any extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. This same permissible language is found in our Supreme Court's decisions in both People v. Hobley and People v. Holmes. To be clear, the jury note indicated that Ms. Jones had communicated something to the other members of the jury. But we will never know exactly what she said because the trial court agreed with the state's assertion that Defense Counsel was embarking on an impermissible invasion of the jury's deliberative process. This claim is entirely refuted by the record where Defense Counsel clearly and correctly demonstrated his understanding of how the law limited the inquiry to matters of substance, not effect. The trial court's conclusion that the proposed inquiry would include the motives, methods, or processes by which this verdict was reached cannot be reconciled with the law and its decision to bar any inquiry was an abuse of discretion. In barring the inquiry, the trial court deprived Mr. Hamilton of his right to be judged based on competent evidence introduced in open court in his presence by the witnesses who confront him. Therefore, this court should remand for a new trial. The last issue I'd like to discuss in detail here concerns improper comments made by the state during their closing arguments. The record shows that approximately three pounds of cannabis was recovered from Mr. Hamilton's vehicle. That's a fact. Although the charge related to cannabis was severed from the instant case, the fact remains that the cannabis actually did exist and was in the vehicle, at least according to this record. It was the state's burden to prove that Mr. Hamilton had knowledge that a firearm was present in the vehicle in order to prove his possession of that firearm. In its closing argument, the state told the jury there is no other reason to flee that officer other than he knew the weapon was in the vehicle and he wasn't supposed to have it. That just isn't true. The state knew Mr. Hamilton had approximately three pounds of cannabis in that vehicle. I don't mean to stop you, counsel, but didn't the trial court bar that from being introduced? The trial court barred mention of the cannabis on motion from defense counsel. This is true. And references to that cannabis were in fact barred properly so. However, for the state to suggest that there was no other reason just simply can't be reconciled with the truth. And while the state was barred from making references directly to the cannabis, their inference here was that the only reason Mr. Hamilton fled was because the gun was in the vehicle. And because this is a closely balanced case where evidence of Mr. Hamilton's knowledge must be proved by circumstantial evidence, the state's comments necessarily suggest that there was absolutely no other reason for him to flee police other than that he knew there was a gun in the car. And that just cannot be reconciled with the actual truth here. The state's comments improperly suggested that the only explanation for Mr. Hamilton's flight was his knowledge of his wife's gun in the vehicle. And that amounted to a calculated attempt to solidify this untruthful impression in the minds of the jurors. The state's comments increased the likelihood that a jury would find that Mr. Hamilton knew that his wife's firearm was present in the vehicle. And this is particularly true where proof of his knowledge had to be proven by the circumstantial evidence in a closely balanced case. In paper v. Wheeler, our Supreme Court held that misconduct in closing arguments is substantial and warrants reversal in a new trial if the improper remarks constitute a material factor in the defendant's conviction. If the jury could have reached a contrary verdict had the improper remarks not been made or the reviewing court cannot say that prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. Mr. Hamilton's knowledge of the gun was a material factor in his conviction and the state had the burden to prove that knowledge. Had the state not made such a misrepresentation to the jury, the jury could have reached a different conclusion. Therefore, this court should grant a new trial. For the foregoing reasons, Mr. Hamilton respectfully requests this court reverse his convictions and sentences and remand this case for a new trial. Thank you. Thank you, Mr. Hanson. Other questions, Justice Barberos? No. Justice Bowie? No. All right, thank you. Ms. Bella, are you ready to proceed? Good morning, Your Honors. May it please the court, counsel. My name is Jamie Bella on behalf of the people of the state of Illinois. There are four issues in this case. I will be discussing three as well as defense counsel. And starting with the first issue regarding the ineffective assistance of counsel related to the stipulation of the defendant's two prior convictions. It's the state's position that this issue was forfeited. I recognize that the defendant did express during trial his concern about having his convictions stated before the jury. However, after trial, he was represented by a total of four different attorneys. And the four different attorneys raised in total nine different claims of ineffective assistance of counsel, none of which touched on the issue being raised now on direct appeal. In addition to the claims raised by the four attorneys that represented defendant in post-trial, defendant also personally filed a series of pro se motions on his own behalf. The first of which was a motion to vacate. And the second was a motion for an evidentiary hearing. And in neither of those did the defendant raise this issue as well. So in total, there was nine ineffective assistance and two claims raised by the defendant personally, none of which raised this issue. So there's a strong case for forfeiture here, notwithstanding the fact that this is an ineffective assistance of counsel, which would typically bypass the forfeiture rule if it weren't for the fact that he had been represented by separate counsel in post-trial proceedings. I apologize. However, if this court were to overlook the forfeiture and hear the issue on its merits, the state's position is that at the time of this trial, the cases that are relied on now by defense counsel or by defendant on appeal was not decided at the time and the prevailing precedent at the time dictated to stipulate to the specific convictions in order to satisfy the elements of armed habitual criminal. So in other words, at the time of this trial, Taylor had not been decided yet as far as, I believe, my colleagues today, Justice Vaughn and Justice Thewey, along with Justice Cates, decided that case and that until that case came out, the requirement for this charge brought against this defendant was that the specific prior convictions be listed. Is that correct? Correct. In that case, in Taylor, the counsel did not stipulate. There was no stipulation and the actual convictions that underlie the armed habitual criminal were actually at issue in the trial. So there was no stipulation at all. In cases where counsel is going to stipulate, the prevailing precedent at the time, which was before Taylor, was to stipulate to the names only in order to satisfy the elements of the specified offenses for armed habitual criminal. So it's different in that sense, but I think also another way that the Taylor case and its impact on this case is amplified by the fact that this issue was not raised in the court below. If it had at the time and counsel had been allowed an opportunity to testify in a hearing on ineffective assistance to counsel, we would have heard how the precedent that existed at the time interplayed with counsel's trial strategy. And I disagree also with the defendant's position that the state is not arguing that this was trial strategy. That is the basis of ineffective assistance of counsel, and especially when a stipulation for prior convictions is trial strategy. And there's a rebuttable presumption that counsel's strategy was sound. So we're not arguing trial strategy. The bigger issue here is the forfeiture and the way that the Taylor case should be applied to a case where it had not been decided at that time under facts that are different from Taylor and that there was a stipulation that was in accord with the prevailing precedent controlling in that district at the time. So the way that those two issues impact with the forfeiture, I think is the bigger issue here because there's a total of nine claims and if this was the important one, there's no reason four different attorneys operating all under the same precedent that existed at the time, none saw this as a viable issue to raise in post-trial proceedings. And now with the benefit of Taylor on direct appeal, the defendant is asking to bypass forfeiture and to apply a case that did not exist at the time that the trial took place. So I think those two issues kind of operate together and that the issue should be determined as forfeited. The other issue that I'd like to discuss is the jury issue with Juror Jones regarding the jury note that was sent out. This issue was invited by the defendant. When Juror Jones initially testified during board year, it was very clear that she knew the defendant and had known him for a very long time and on a personal basis where they attended school for many years together. She did say that they were not close friends, but that they did know each other and that she was familiar with them for many years. The following day after she was selected for the jury, at defendant's request, council had actually initially wanted to strike her as a juror, but the defendant personally stated that it was his desire that she remain on his jury. And then so she was put on the jury the following day. The bailiff came to the court and informed the trial judge that Jones was expressing some concern about the fact that she had been selected and was serving on the jury. At that time, the defendant maintained his position that he wanted her to remain on the jury. And then after the jury note came out, the trial court said that he was not going to bring the jury in for an inquiry. After the judge and the defendant and the state see this portion of the issue very differently, the fact that the defendant, he maintained his desire to have Jones remain on the jury after the court had already ruled that he would not allow inquiry into this issue, when at that time, the jury's specific request was to have the alternate brought in and Jones released, which would have prevented whatever the issue is here that the defendant is raising as far as what she may have said, if she had been removed from the jury. But again, the defendant insisted that he knew what she had said and that he knew her and he still wanted her to remain on the trial. So if the argument on appeal now is that he didn't get the outcome he wanted at trial and now wants a second bite at the apple after injecting his own jury with this problem, even when his attorney and the juror herself both wanted for her to not be on the jury at all. This all happened at the defendant's insistence. Now, if the court had allowed defense counsel to excuse Jones over the defendant's objection, we would be here on appeal with a different issue about the defendant not being allowed to have the juror he desired on the trial. So in either direction, how this would have played out with the defendant's behavior and the way that the juror was put on the jury for service in this case, it really plays to an invited error, which of course is not applicable under a plain error. And since there was no objection to her serving on the jury, it wouldn't even be forfeited because an invited error is not subject to plain error review. So the state requests that this court find that this was an invited error if any error existed. If not, the state's position is that the specific inquiry that counsel was requesting is not allowable under Rule 606. This is not a case where, like in Hobley, where the jurors specifically stated that they had been encountered by parties who were not in the jury and were made to feel fearful. Jones is a member of the jury and her note doesn't indicate that she said she was approached by the defendant's family. She was stating her own subjective fear, which I think could happen in any jury. Anytime a juror is deciding a case where there's a violent crime at all, any juror would be free to express their concern about what might happen if we convict this person. And there's nothing in the note to indicate that she gave a rundown of how she was contacted outside of court overnight and threatened in any way. This was her expressing her own concern about serving on the jury. I see that I've run my time. If the state may briefly conclude, I can stand on the issues as written in my brief for the remaining issues. Before you give us your conclusion, I would ask President Justice Vaughn if I could elicit another little bit of time from Ms. Bella to answer one more question that I have. Yes. My concern is if you could just very, very briefly touch on the defendant's argument that the statements made in closing about the reason for him running from the police, how that isn't prejudicial and improper. The comment itself, as your honors indicated in questioning, the marijuana that was included in the vehicle was initially severed so it was a separate trial. There was a motion in Lemonade to exclude that information about that contraband. I understand that, but in knowing that full well, that the state wasn't permitted to address the marijuana, does it not clarify for me how that's still the statement that the only reason he would have run was the knowledge of the gun when we know that that's not necessarily true. Another reason he would have run was three pounds of marijuana in the vehicle. Correct, your honor. The difference I think here is that the only word in that comment, the remark in general, is the word only. And that's a big word in this context. Yes, your honor, I agree. However, the fact that the defendant fled allows the state to argue that there's an inference that he was acting under a consciousness of guilt. By severing the trials, it would have had the effect of preventing the state to make a perfectly allowable argument that he was expressing a consciousness of guilt by fleeing. But isn't it somewhat misleading for the state to suggest that his consciousness of guilt could only have stemmed from knowledge of the gun when the state's fully aware of the fact that he also had three pounds of marijuana in the car? Well, I mean, I think any prejudice that would flow from that, I mean, it's an isolated comment. It wasn't something that was repeated over and over and over again. So any prejudice that did come from it was isolated. And there was no, I can't recall now specifically if there was an objection raised at the moment that the comment was made. So had it been raised and the jury had been admonished on that point, that would have cured any prejudice. If not, then we have a forfeiture issue on that as well because the jury could have been informed to ignore the word only and to focus solely on the fact that he fled and how that can relate to a consciousness of guilt. Okay. Okay. Thank you. Thank you. Justice, do you have any other questions? No, I was going to ask the, I'm sorry, Justice Barberis. I just wanted to point out that Ms. Bella was about to conclude her argument and I did, I kind of interrupted her conclusion so that I could interject my question, but I don't know if she gave her an additional minute to conclude then. Is that what you're asking, Justice Barberis? If she needs it, I guess. Well, the state would just ask that the court rule find, affirm the defendant's conviction and sentence. Thank you. Thank you. Mr. Hansen, rebuttal. You're still on mute, Mr. Hansen. Thank you. Thank you, Justice Vaughn. The state seems to suggest that they know exactly what was said here. And that Mr. Hamilton was aware of what Juror Jones said to the other jurors. And that's just not true because the court barred that. The closest we can come to that is the evidence presented in the jury note and defense counsel's proffer during the hearing on post-trial motions. We never were able to hear from the jurors. So for the state to suggest that they know exactly what was said, it just strains credulity. As to the question of invited heir, yes, Ms. Jones knew Mr. Hamilton. Mr. Hamilton was aware  fact. I believe eight years had passed since they had been in high school together. And he kept her on that jury despite this knowledge. With respect to Mr. Hamilton's desire to keep her on the jury following the jury note, that decision was made after the court had already barred any inquiry into what was said. He was faced with having her removed or keeping her without knowing. That was a decision made without knowledge. I would argue that is not invited heir. As opposed to the applicability of tailored to this case, generally applied to the case on appeal unless the court states that it is to be applied only prospectively. I would also like to note that the reasoning in Taylor was not necessarily new law. It stemmed back to old chief and Walker in cases we decided and the court states burden of proof to prove in a status based crime such as criminal or in the case of old chief that apply equally under the same statute. I   like to note that there is a distinction between people's exhibit one which listed the names of Mr. Hamilton's prior convictions and a certified copy of that. That's a distinction without difference. The jurors were well aware of what Mr. Hamilton had been convicted of. His prior convictions were referenced in the jury instructions. The state made repeated references to them. The jurors   of   between people's      names of Mr. Hamilton's prior convictions and a certified copy of that jury instruction. The jurors were well aware of   prior convictions and a certified copy of that jury instruction. The jurors  aware of Mr. Hamilton's prior convictions and a certified copy of that jury instruction. The jurors were well aware of              of Mr. Hamilton's prior convictions and a certified copy of that jury instruction. The jurors were well aware of Mr.